# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00235-COA

**ERIC DEJUAN JONES A/K/A ERIC D. JONES A/K/A ERIC JONES**      **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/16/2022 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ZAKIA B. CHAMBERLAIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 02/27/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., GREENLEE AND McCARTY, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1. Following a jury trial, Eric Jones was convicted of aggravated trafficking of methamphetamine, possession of marijuana with the intent to sell or transfer, possession of a firearm by a felon, and possession of a stolen firearm. On appeal, Jones argues that the trial court erred by granting the State's pretrial motion to amend the aggravated trafficking charge of the indictment. He also argues that the evidence is insufficient to support his convictions for the two drug charges and possession of a stolen firearm.[1] In the alternative, he argues that

---

[1] Jones does not challenge his conviction for possession of a firearm by a felon.

he is entitled to a new trial on the drug charges because the jury's verdicts on those charges are contrary to the overwhelming weight of the evidence.

¶2. The trial court did not err by granting the State's motion to amend the indictment, and Jones is not entitled to a judgment of acquittal or a new trial on the drug charges. However, the evidence is insufficient to sustain Jones's conviction for possession of a stolen firearm. Therefore, we reverse his conviction and render a judgment of acquittal on that count alone. We affirm Jones's convictions and sentences in all other respects.

## FACTS AND PROCEDURAL HISTORY

¶3. On July 27, 2019, after receiving information that drugs were being sold at a residence on Tyrone Drive in Prentiss, Detective Richard Browning of the Prentiss Police Department and other law enforcement officers searched the residence pursuant to a warrant. Inside the residence, they found Jones, a large quantity of drugs, and a stolen firearm. Chris Fairley and Lateria Beale were also on the premises but outside of the house. "[P]rior to" obtaining the warrant, Browning "knew that" the house was "Eric Jones's residence." Browning "verified" that information by confirming with the Town of Prentiss Water Department that Jones had applied for, obtained, and continued to maintain water service for the home.

¶4. In the "front room" of the house, officers found "a pretty large bag" of "crystallized substance," two digital scales, a pipe, and a red book or "ledger," all on a table in plain view. Browning testified that the ledger listed numerous drug sales using slang or coded language for the substance sold,[2] along with the buyer's name and the amount paid or owed. Browning

---

[2] For example, "milk" or "COC" meant cocaine, "weed" meant marijuana, and "loud" meant hydroponic high-grade marijuana.

2

further testified that based on his experience, the digital scales found in close proximity to drugs were likely used to distribute the drugs. Browning also found a bag in the front room that contained a large quantity of "green leafy substance," a large quantity of "crystallized substance," about thirty "multi-colored dosage pills," and a loaded handgun. According to Browning, the totality of the evidence found in the front room "paint[ed] a business."

¶5. The house had three bedrooms, but Browning testified only one was a "working bedroom," which was "Eric Jones's bedroom." Browning testified that this bedroom had a made-up bed with sheets, blankets, and clothes in the closet. The other two bedrooms were filled with "junk and overturned furniture" or "tools," and the beds had no sheets or pillows on them.

¶6. The working bedroom's closet also contained a safe in which the officers found "much larger" amounts of the "green leafy substance," "lots more crystallized substance," and more multi-colored pills. In another room, law enforcement found a "debilitated dresser" containing $2,313 in cash. Browning testified that based on his experience working drug cases, the circumstances suggested that a "full-blown" "narcotics distribution" business was being operated out of the house. Officers seized the evidence they found and arrested Jones. Forensic chemists from the federal Drug Enforcement Agency confirmed that the green leafy substance was marijuana (approximately 587 grams total) and that the crystallized substance was methamphetamine (over 400 grams total).

¶7. A Jefferson Davis County grand jury indicted Jones for aggravated trafficking in methamphetamine, possession of marijuana with the intent to sell or transfer, possession of

3

a firearm by a felon, and possession of a stolen firearm. Prior to trial, the State moved to amend the indictment as to the aggravated trafficking charge. Jones was initially indicted for aggravated trafficking for possessing over 200 grams of methamphetamine with the intent to sell or transfer the drugs. *See* Miss. Code Ann. § 41-29-139(f)-(g) (Rev. 2018). The State moved to amend that count to allege aggravated trafficking based on simple possession of the same quantity of methamphetamine. *See id.* The court granted the State's motion.

¶8. Following a jury trial, Jones was convicted of the four counts. The court sentenced Jones to consecutive terms of life imprisonment for aggravated trafficking, forty years for possession with intent, ten years for possession of a firearm by a felon, and five years for possession of a stolen firearm. Jones was sentenced as a second or subsequent drug offender and nonviolent habitual offender. *See* Miss. Code Ann. § 41-29-147 (Rev. 2018); Miss. Code Ann. § 99-19-81 (Rev. 2020). Jones filed a motion for judgment notwithstanding the verdict or a new trial, which was denied, and a notice of appeal.

## ANALYSIS

¶9. On appeal, Jones argues that the trial court erred by granting the State's motion to amend the indictment as to the aggravated trafficking charge. Jones also argues that there is insufficient evidence to support his convictions for the two drug charges and for possession of a stolen firearm. In the alternative, he argues that the jury's verdicts on the drug charges are contrary to the overwhelming weight of the evidence.

### I.    Amendment to the Indictment

¶10. Under Mississippi Code Annotated section 41-29-139(f), the offense of "trafficking

in controlled substances" includes *both* possession with the intent to sell or transfer thirty or more grams of a Schedule I or II controlled substance (except for marijuana and synthetic cannabinoids)[3] *and* simple possession of thirty or more grams of a Schedule I or II controlled substance (except for marijuana and synthetic cannabinoids).[4]  That is, proof of *either* possession with intent *or* simple possession can support a conviction for trafficking.  Then, "[a]ny person trafficking" more than *200 grams* of a Schedule I or II controlled substance "shall be guilty of aggravated trafficking."  Miss. Code Ann. § 41-29-139(g).  Thus, "aggravating trafficking" also includes *both* possession with intent *and* simple possession, and the threshold quantity (200 grams) is the same for either.  Again, proof of *either* possession with intent *or* simple possession will support a conviction for aggravated trafficking if the possession involves more than 200 grams.

¶11.    Here, Jones's original indictment charged him with aggravated trafficking based on possession with the intent to deliver, sell, or transfer the drugs.  Prior to trial, the circuit court granted the State's motion to amend the indictment to charge aggravated trafficking based

---

[3] Miss. Code Ann. § 41-29-139(f)(2) ("'Trafficking in controlled substances' as used herein means: (A) A violation of subsection (a) of this section involving thirty (30) or more grams . . . of a Schedule I or II controlled substance except marijuana and synthetic cannabinoids . . . ."); Miss. Code Ann. § 41-29-139(a) ("Except as authorized by this article, it is unlawful for any person knowingly or intentionally: (1) To . . . possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance . . . .").

[4] Miss. Code Ann. § 41-29-139(f)(2) ("'Trafficking in controlled substances' as used herein means: . . . (C) A violation of subsection (c) of this section involving thirty (30) or more grams . . . of a Schedule I or II controlled substance except marijuana and synthetic cannabinoids . . . ."); Miss. Code Ann. § 41-29-139(c) ("Simple possession": "[I]t is unlawful for any person knowingly or intentionally to possess any controlled substance" except for lawfully obtained medical marijuana and prescription medicines or "as otherwise authorized by this article.").

on simple possession. The court did not err by doing so.[5] "Defendants in criminal cases have a constitutionally protected right to be informed of the nature and cause of charges brought against them. This requires that an indictment describe with precision and certainty each element of the offense charged." *Lee v. State*, 944 So. 2d 35, 38 (¶7) (Miss. 2006) (citations omitted). However, "[c]riminal defendants are deemed on notice of all the elements contained in the greater offense, and thus are likewise on notice of any other offense, the commission of which is necessarily included in the offense with which the defendant is charged in the indictment." *Hye v. State*, 162 So. 3d 750, 757 (¶20) (Miss. 2015). Mississippi Code Annotated section 99-19-5(1) (Rev. 2020) specifically provides that

> [o]n an indictment for any offense the jury may find the defendant guilty of the offense as charged, or of any attempt to commit the same offense, *or may find him guilty of an inferior offense, or other offense, the commission of which is necessarily included in the offense with which he is charged in the indictment*, whether the same be a felony or misdemeanor, without any additional count in the indictment for that purpose.

*Id.* (emphasis added).

¶12. In the present case, Jones's original indictment charged him with aggravated trafficking based on his possession with the intent to deliver or sell over 200 grams of methamphetamine. The court's order allowing the amendment simply deleted the language regarding an intent to deliver or sell and thereby amended the indictment to charge aggravated trafficking based on Jones's simple possession of over 200 grams of methamphetamine. It is well-settled that simple possession is a lesser-included offense of

---

[5] "The standard of review for an amendment of an indictment . . . is de novo." *Fulton v. State*, 146 So. 3d 975, 977 (¶5) (Miss. 2014).

6

possession with intent. *E.g.*, *Torrey v. State*, 816 So. 2d 452, 454 (¶3) (Miss. Ct. App. 2002). Thus, Jones's indictment for aggravated trafficking by possession with intent put him on notice that he could also be convicted for aggravated trafficking by simple possession. Accordingly, it was not even necessary to amend the indictment—the State could have simply requested a jury instruction on the lesser-included offense of aggravated trafficking by simple possession. *Id.* In any event, the circuit court did not err by granting the State's pretrial motion to amend the indictment.

## II. Sufficiency and Weight of the Evidence

¶13. Jones next challenges the sufficiency and weight of the evidence as to both drug charges and the sufficiency of the evidence that he intentionally possessed a stolen firearm. We review a challenge to "the legal sufficiency of the evidence" de novo, but the evidence must be "viewed in a light most favorable to the State." *Johnson v. State*, 904 So. 2d 162, 166 (¶7) (Miss. 2005). This means that "all credible evidence supporting a defendant's guilt should be accepted as true, and all favorable inferences drawn from the evidence must be reconciled in the prosecution's favor." *Id.* "We determine if any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 285 So. 3d 156, 159 (¶11) (Miss. 2019). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010). Rather, we must affirm the conviction as long as there is sufficient evidence for a rational juror to find that the State proved all the elements of the offense. *Id.*

¶14. Different standards of review govern a challenge to the weight of the evidence. *Burden v. State*, 347 So. 3d 174, 176 (¶8) (Miss. 2022). A challenge to the weight of the evidence addresses the trial judge's denial of a motion for a new trial, which we review only for an abuse of discretion. *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017). Our standard of review is deferential because the "trial judge is in the best position to view the trial." *Id.* at 291 (¶18) (quoting *Amiker v. Drugs For Less Inc.*, 796 So. 2d 942, 947 (¶16) (Miss. 2000)). "The trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped" to rule on a new trial motion. *Id.* at 291-92 (¶18) (quoting *Amiker*, 796 So. 2d at 947 (¶16)). When we review a challenge to the weight of the evidence, we also afford great deference to the jury's verdict. *Id.* at 289 (¶1). The jury is the fact-finder, and this Court will not "assume[] the role of juror on appeal." *Id.* As the Supreme Court made clear in *Little*,

> [w]e do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury. Our role as [an] appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

*Id.*

### A. Trafficking Methamphetamine and Possession of Marijuana With Intent

¶15. First, Jones challenges his drug convictions by arguing that there was insufficient evidence that he possessed the methamphetamine and marijuana seized during the search of the house. "Possession of a controlled substance may be actual or constructive, individual

8

or joint." *Dixon v. State*, 953 So. 2d 1108, 1112 (¶9) (Miss. 2007) (citing *Berry v. State*, 652 So. 2d 745, 748 (Miss. 1995)). "Constructive possession may be shown by establishing that the drug[s] involved w[ere] subject to the defendant's dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances." *Terry v. State*, 324 So. 3d 753, 755-56 (¶7) (Miss. 2021) (quoting *Haynes v. State*, 250 So. 3d 1241, 1244-45 (¶8) (Miss. 2018)). Moreover,

> [the Mississippi Supreme] Court has affirmed a conviction based on constructive possession when: (1) The defendant owned the premises where the drugs were found and failed to rebut the presumption that he was in control of such premises and the substances within; or (2) the defendant did not own the premises but was sufficiently tied to the drugs found there by (a) exerting control over the premises when he knew or should have known of the presence of the substance or (b) placing himself in the midst of items implicating his participation in the processing of the substance.

*Id.* at 756 (¶9) (quoting *Dixon*, 953 So. 2d at 1113 (¶11)). Reduced to more basic principles, our Supreme Court has stated,

> The correct rule in this jurisdiction is that one in possession of premises upon which contraband is found is presumed to be in constructive possession of the articles, but the presumption is rebuttable. [W]here contraband is found upon premises not in the exclusive control and possession of the accused, additional incriminating facts must connect the accused with the contraband. Where the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband.

*Id.* at (¶10) (quoting *Powell v. State*, 355 So. 2d 1378, 1379 (Miss. 1978)). In *Jordan v. State*, 158 So. 3d 348 (Miss. Ct. App. 2014), *cert. denied*, 157 So. 3d 835 (Miss. 2015), this Court held that the presumption of constructive possession described above applies not only to an "owner" in possession of the premises but also to "the tenant who lives there" and is

9

actually in "possession" of the premises. *Id.* at 353 (¶14).

¶16. Here, Jones denies that he owned the residence at which the drugs were seized. However, the State showed that Jones applied for water service at the residence a year before the search. Jones's application for water service included a photocopy of his driver's license, and his bill had been paid when the house was searched. Moreover, Browning testified that "prior to" obtaining a warrant, he "knew that" the residence was "Eric Jones's residence." Thus, whether Jones was in possession of the residence was a factual issue for the jury to decide. *See Terry*, 324 So. 3d at 756 (¶10); *Pipkins v. State*, 878 So. 2d 119, 121 (¶6) (Miss. Ct. App. 2004). Drawing reasonable inferences in favor of the State, there was sufficient evidence for a rational juror to find that Jones was in possession of the home and constructively possessed the drugs found inside.

¶17. Moreover, Jones was the only person inside the home when the officers searched it and found large amounts of drugs, paraphernalia, and a drug ledger in plain view. Such evidence is sufficient to support a conviction based on constructive possession. Our Supreme Court has noted that

> convictions for constructive possession have been affirmed when, 'the defendant did not own the premises but was sufficiently tied to the drugs found there by (a) exerting control over the premises when he knew or should have known of the presence of the substance or (b) placing himself in the midst of items implicating his participation in the processing of the substance.'

*Terry*, 324 So. 3d at 757 (¶14) (quoting *Dixon*, 953 So. 2d at 1113 (¶11)).

¶18. At trial, the State presented evidence that large quantities of drugs were found in plain view in the home's common area. And Jones, being the only person in the home at the time

10

of the search, was "exerting control over the premises when he knew or should have known of the presence of the substance[s]" that were in plain view. *Id.* "While it is true that simply being in nonexclusive possession of the residence"—assuming arguendo that Jones was not the owner or tenant in possession—"is insufficient to prove constructive possession, the drugs in the case *sub judice* were in plain view in a common area of the residence." *Id.* at 756 (¶12). As in *Terry*, there was sufficient evidence for a rational juror to infer that Jones exercised dominion and control over the drugs and other items in plain view in the front room. Thus, a rational juror could find that Jones constructively possessed the drugs.

¶19. The digital scales and the drug ledger in the front room also support the jury's verdicts and Jones's convictions. Indeed, the ledger had Jones's name ("Eric") on the cover and recorded numerous drug transactions. Moreover, Browning testified that the totality of the evidence found during the search indicated the existence of a drug distribution "business." And by "placing himself in the midst of [these] items," including his drug ledger, Jones implicated himself as a participant in the operation. *Id.* at 757 (¶14). In addition, the substances found in the safe in the home's bedroom were of the same kind and type as those found in plain view in the front room. The evidence was sufficient for a rational juror to find that Jones exercised dominion and control over those drugs as well.

¶20. In sum, there was sufficient evidence for a rational juror to infer that Jones was in possession of the residence as an owner or tenant, thereby raising a rebuttable presumption that he constructively possessed the methamphetamine and marijuana in question. In the alternative, there was ample circumstantial evidence from which a rational juror could have

11

inferred that Jones was running or participating in a significant drug distribution business in the house and constructively possessed the drugs in question. Accordingly, the evidence was legally sufficient to support Jones's drug convictions.

¶21. In addition, the trial judge did not abuse his discretion by denying Jones's motion for a new trial with respect to the two drug charges. In reviewing this issue, "[w]e do not reweigh evidence"; rather, we must "view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little*, 233 So. 3d at 289 (¶1). As discussed above, the State presented significant circumstantial evidence of Jones's guilt, and no other evidence "overwhelm[ed]" the State's evidence.[6] Accordingly, Jones's two drug convictions must be affirmed.

## B.      Possession of a Stolen Firearm

¶22. Jones was convicted under Mississippi Code Annotated section 97-37-35, which criminalizes the intentional possession of a "stolen firearm." Miss. Code Ann. § 97-37-35(1) (Rev. 2020). Our Supreme Court has held that "[g]uilty knowledge is the gist of [this] offense." *Barton v. State*, 303 So. 3d 698, 701 (¶14) (Miss. 2020). "For the State to prove guilty knowledge, it must prove that the defendant received the [firearm] under circumstances that would lead a reasonable person to believe it was stolen." *Id.* The evidence supporting the conviction "can be circumstantial," *id.*, but it must be sufficient to "establish beyond a reasonable doubt that the accused knew the [firearm] had been stolen,

---

[6] Jones rested without offering any evidence.

12

and mere supposition or suspicion as to his knowledge will not suffice." *Id.* at 702 (¶16) (quoting *Rodgers v. State*, 222 Miss. 23, 30, 75 So. 2d 42, 44 (1954)).

¶23.　At trial, the State presented no direct or circumstantial evidence to show that Jones knew that the firearm had been stolen. In fact, there is no evidence as to when or how Jones obtained the firearm—or even when or where the firearm was stolen. At trial, the State only showed that the firearm had been reported stolen and had been returned to its owner. In closing argument, the State argued,

> The other question that we have on the possession of a stolen firearm is how did Eric know it was stolen. Well, if you're a felon, it makes it illegal for you to have a firearm. That also means you can't purchase one. You go in somewhere to purchase a firearm and you've got a felony, when they run a background check they're not going to sell it to you. I'm going to let you use your common sense and put two and two together. The firearm was stolen. He can't purchase it. I think we can all figure out how he got it.

¶24.　This case is essentially on all fours with the Supreme Court's recent decision in *Barton*. In *Barton*, law enforcement officers found a gun underneath Barton's car seat during a traffic stop. *Id.* at 699 (¶4). Officers ran the serial number on the gun and learned that it "had been reported stolen." *Id.* "Barton denied that [the gun] was his" and "denied any involvement with the gun." *Id.* at 700 (¶¶7, 11). The State presented no evidence as to how Barton obtained the firearm and no evidence as to when the firearm was stolen. *Id.* at 700, 703 (¶¶8, 19). Like Jones, Barton was a felon, and he conceded that sufficient evidence supported his conviction for possession of a firearm as a felon. *Id.* at 699 (¶1). But Barton challenged his conviction for possession of a stolen firearm, arguing "that the evidence was insufficient to show that he knew the firearm was stolen." *Id.*

13

¶25.	The Supreme Court agreed with Barton and reversed and rendered his conviction for possession of a stolen firearm. The Court reasoned as follows:

> The circumstantial evidence, considered in the light most favorable to the prosecution, fails in this case. No evidence shows how Barton came to possess the hand gun or, alternatively, that Barton possessed recently stolen property. In fact, no evidence shows exactly when the firearm was stolen. The record only shows that the owner went to look for the firearm "one day" and did not find it. Additionally, the State argues Barton knew the firearm was stolen because Barton attempted to conceal the firearm. But Barton is a convicted felon. . . . It is equally plausible that Barton hid the handgun not because it was stolen but because he was, in fact, a convicted felon. While Barton denied the gun was his, this fact likewise supports both theories equally.
>
> The difficulty in this case for the prosecution is the dearth of evidence explaining how Barton came to possess the firearm in question. There is also no evidence as to when the gun was stolen, which would provide proof that Barton was in possession of recently stolen property. Combined with concealment, such evidence might be sufficient to overcome Barton's alternative theory. . . . [H]owever, there was no evidence that would allow a jury to determine that it was more likely that Barton hid the gun because it was stolen rather than because he was a convicted felon. . . .
>
> Considered in the light most favorable to the State, the evidence of possession of the stolen firearm combined with its concealment is insufficient to prove Barton knew the firearm was stolen . . . . The State failed to meet its burden on the possession-of-a-stolen-firearm charge.

*Id.* at 703-04 (¶¶19-21).

¶26.	For the same reasons, Jones's conviction for possession of a stolen firearm must be reversed and rendered. On appeal, the State argues that "Jones's concealment of the firearm in his backpack" shows his guilty knowledge,[7] but *Barton* makes clear that evidence of concealment is insufficient to establish Jones's guilt because it is equally plausible that Jones

---

[7] Browning testified that the firearm was in a backpack in the front room of the house. There was no other evidence of "concealment." But even assuming arguendo that the gun was "concealed," such evidence, standing alone, is clearly insufficient under *Barton*.

14

concealed the weapon only because he is a felon. *Id.* We also emphasize that just as in *Barton*, the State offered "no evidence as to when the gun was stolen, which would provide proof that [Jones] was in possession of recently stolen property."[8] *Id.* at 703 (¶20). Because the evidence is insufficient to prove beyond a reasonable doubt that Jones knew that the firearm was stolen, Jones's conviction for possession of a stolen firearm must be reversed and rendered. *Id.* at 704 (¶¶20-21).

## CONCLUSION

¶27. The trial court did not err by denying the State's motion to amend the indictment. In addition, the evidence was sufficient to support Jones's convictions for trafficking in methamphetamine and possession of marijuana with the intent to deliver, sell, or transfer, and the trial court did not abuse its discretion by denying Jones's motion for a new trial on those counts. However, the evidence is insufficient to support Jones's conviction for possession of a stolen firearm. Therefore, we reverse and render Jones's conviction and sentence for possession of a stolen firearm. We affirm Jones's three other convictions and sentences.

¶28. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

---

[8] For this reason, our recent decision in *Ratcliff v. State*, No. 2022-KA-00690-COA, 2023 WL 8424500 (Miss. Ct. App. Dec. 5, 2023) (motion for rehearing filed), is distinguishable. In *Ratcliff*, a divided Court distinguished *Barton* and upheld a conviction for possession of a stolen firearm based on proof that the firearm was "recently stolen." *Id.* at *3-4 (¶¶28, 32). In *Ratcliff*, the State presented evidence that the firearm had been stolen less than a month before it was found in the defendant's possession. *Id.* at *4 (¶30). No similar proof was offered in *Barton* or in this case.